UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHANIE GALARZA, :
: NO. 3:19-CV-0400
          Plaintiff :
: (JUDGE MARIANI)
v. :
:
BEST WESTERN PLUS – GENETTI :
HOTEL AND CONFERENCE CENTER and :
GENETTI HOSPITALITY, INC., :
          Defendants. :

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

Presently before the Court is the motion for summary judgment filed by Defendants Best Western Plus-Genetti Hotel and Conference Center and Genetti Hospitality, Inc. ("Defendant"). (Doc. 18). The Defendant seeks summary judgment in its favor and against Plaintiff Stephanie Galarza ("Plaintiff") on the complaint alleging sexual harassment and constructive discharge. For the reasons discussed below, the Court will deny the motion.

### II. STATEMENT OF MATERIAL FACTS

Plaintiff began working for the Defendant in June 2017. (Doc. 27-5, Pl. Dep. 13-14).[2] Defendant is a hotel with several residential units, and Plaintiff generally worked in the laundry room of the hotel. (*Id.* at 35). After she began working, one of her co-workers,

---

[1] This matter has been reassigned to the undersigned following the passing of our colleague, the Honorable James M. Munley, in March of this year.
[2] Generally, for citations to the record, the Court cites to the CM/ECF page number. For the deposition transcripts, however, the page number from the transcript is used.

1

Richard Clark, the Defendant's maintenance supervisor, began making sexually charged comments to her. She encountered Clark, at least four times a day, and he typically had something to say or a lurid look or gesture for the plaintiff. (*Id.* at ¶ 49). According to the Plaintiff: "He would comment on things like, oh my hair. I'm so petite. I wonder what it feels like. Basically, holding onto me, I wonder what it feels like. Or he would comment on my butt, things of that nature. … 'I wonder how it feels for me to hold you.' I took it as have intercourse with you[.] I believe when he said things like that, I wonder what it feels like to be with you is basically like to have intercourse with me." (*Id.* at ¶¶ 51-52).

Clark made lewd sexual comments to the Plaintiff two or three times a day during working hours and on several occasions made sexual humping gestures toward her. (*Id.* at ¶¶ 49, 64-66). Additionally, he would refer to females generally as "bitches", and one day when Vera Hannis, Plaintiff's supervisor, was in a bad mood, Clark opined to Plaintiff that "[s]he just needs to be fucked." (*Id.* at ¶ 76). Plaintiff would tell Clark to stop making the comments, but he would respond with, "[Y]ou'll be all right. Get over it. Oh, it's no big deal." (*Id.* at ¶ 50).

Plaintiff further explained the comments as follows: "He would tell me things like when you going to let me hit it. You should let me hit it. When you going to let me tap it. He told me to leave my relationship." (*Id.* at ¶ 48). Plaintiff further explained that "to tap it" and "to hit it" means to have sexual intercourse. (*Id.* at ¶ 60). Clark made the comments openly

in front of other employees, including Sandy Tompkins, who suggested that plaintiff report the harassment. (*Id.* at ¶¶ 53-54).

Thus, after approximately a month of employment and harassing behavior from Clark, Plaintiff reported the comments to her immediate supervisor Vera Hannis. (*Id.* at ¶ 54, 67, 150). She told her that Clark was disrespectful and making her uncomfortable and that she wanted to quit her employment. (*Id.* at ¶ 54). Hannis indicated that she did not believe Clark would suffer any consequences for his behavior as he was the maintenance supervisor and had a relationship with the hotel owner/management outside of work. (*Id.* ¶ at 55).

After complaining to Hannis, the conduct did not abate. In fact, it became more frequent as time went on. (*Id.* at ¶¶ 60-61). Outside of work, Plaintiff discussed Clark's behavior with Defendant's catering supervisor, Maya. (*Id.* at ¶ 57). Maya told her about "[h]ow much of an asshole [Clark] is towards the women at the job place." (*Id.* at ¶ 58). Plaintiff told her of his behavior toward her. (*Id.* at ¶¶ 57-58).

On November 22, 2017, Plaintiff and a co-worker, Sandy Tompkins, were assigned to clean the bathroom in one of the residences when Plaintiff noticed that the sink was clogged. (*Id.* at ¶ 79). She called Clark to fix the clog. (*Id.*) When Clark arrived, Sandy was cleaning the bathtub while Plaintiff cleaned the toilet. (*Id.* at ¶¶ 79-80). Plaintiff's legs were bent and she herself was bent all the way over cleaning the toilet. (*Id.* at ¶ 84). With his hand, Clark struck Plaintiff's buttocks. (*Id.*) He used such force that Plaintiff nearly fell

into the toilet. (*Id.*) Plaintiff described the strike as a "smack and a grab." (*Id.* at ¶ 97). Plaintiff felt Clark's fingers near her vagina. (*Id.* at ¶ 156). Plaintiff asked him if he was serious and Clark said that she would be fine. (*Id.* at ¶ 85). Plaintiff immediately reported the incident to her supervisor, who directed her to contact Human Resources ("HR"). (*Id.* at ¶ 86). On the way to the HR office, Plaintiff encountered Pamela Palmer, the hotel manager. (*Id.* at ¶ 87; Doc. 27-6 at 11). Plaintiff told Palmer what had transpired, and Palmer indicated that she would take care of the situation. (Doc. 27-5, Pl. Dep. at ¶ 88).[3]

On the next day that Plaintiff worked, Clark approached her and indicated that he knew that she had reported his conduct and that he was sorry. (Id. at ¶ 89). Plaintiff believed that under the Defendant's zero tolerance toward sexual harassment that Clark would have been fired. Thus, she went to HR. (Id. at ¶ 91). Plaintiff complained to HR that Clark had violated her and was still on the job. She felt that they had merely given him a "pep talk" and he would suffer no repercussions. (Id. at ¶ 97). She filed a written complaint with HR. (Id. at ¶ 93, Doc. 22-7).

She then told her supervisor what had happened and she told Plaintiff to speak with Gus Genetti, the hotel's owner. (Id. at ¶ 97). Plaintiff then attempted to contact Genetti. She called the front desk office and asked for his phone number. (*Id.* at ¶ 103). The person who answered the phone laughed and said that it does not work that way, and suggested

---

[3] At some point, Plaintiff made a report to the police about Clark striking her, but the police evidently did not pursue charges. (*Id.* at ¶ 99).

4

Plaintiff speak with the hotel manager, Pam Palmer. (*Id.*) Palmer informed Plaintiff that they did not have to speak with Genetti because the situation had all been resolved. (*Id.*) Plaintiff and her boyfriend then spoke to another supervisor at the hotel someone who "holds a high title in the workplace," Tabetha. (*Id.* at ¶ 105). Tabetha indicated that Genetti has an "open door" policy. (*Id.* at ¶ 106). Tabetha suggested that they meet with Genetti. (*Id.* at ¶ 107).

Several days later, Plaintiff, along with her boyfriend and son, met with Genetti. She told him everything that happened. Genetti indicated that some of the girls like what was happening to her. (*Id.* at ¶¶108, 132). Genetti "just basically laughed at us because he didn't feel a smack on the fanny" was a matter of any consequence. (*Id.* at ¶¶ 109, 115). Plaintiff informed Genetti that if Clark was not fired, then she could not continue her employment. (*Id.* at ¶ 110). She felt that HR gave the matter such cursory attention that they saw nothing wrong with the harassing conduct. (*Id.* at ¶¶ 110-111).

At the meeting, Genetti indicated that "he will fire someone for talking shit about him faster than he would fire Clark." (*Id.* at ¶ 126). At the meeting it appeared that the only discipline Clark would receive would be talk that he had already been given. (*Id.* at ¶ 131). Genetti indicated that a touch on a woman's breast or vagina would be a problem, but a "smack on the fanny" did not require employment termination. (*Id.* at ¶ 134).

Plaintiff did not return to work. Several days after the meeting, plaintiff received a text message from Genetti's telephone indicating that she was welcome to come back to

work and that Clark would be suspended for a few days. (*Id.* at ¶¶ 147, 149). Plaintiff concluded that Genetti did not feel that there was any wrongdoing. (*Id.*) Based on their reactions, Plaintiff felt the harassment was acceptable to everyone from Genetti on down. (*Id.* at ¶ 149). Due to the emotional stress Plaintiff suffered from the events, she spoke with a counselor at Community Counseling, and she only applied for employment at jobs where men would not be present. (*Id.* at ¶ 140).

Based upon these allegations, Plaintiff filed the instant complaint, which asserts the following three causes of action: Count I- Hostile Work Environment under Title VII of the Civil Rights Act of 1964 ("Title VII"); Count II – Constructive Discharge under Title VII[4]; and Count III – Violation of the Pennsylvania Human Relations Act. (Doc. 1, Compl. ¶¶ 39-60). At the close of discovery, the Defendant filed a motion for summary judgment. The parties have briefed their respective positions and the matter is ripe for disposition.

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] The complaint labels Count II as "Retaliation" a reading of the count however, and the manner in which the parties address it in their briefs, indicates that it is actually a cause of action for constructive discharge. Accordingly, the Court shall address the count as one for constructive discharge.

6

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).

In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 501 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

### A. Count I – Sexual Harassment Hostile Work Environment

As noted, Plaintiff alleges a sexual harassment hostile work environment claim pursuant to Title VII.[5] Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

---

[5] Plaintiff also raises hostile work environment sexual harassment under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 951 et seq. (Doc. 1, Compl. ¶¶51-60). The Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts" such as Title VII. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Thus, the Court's analysis with regard to Title VII will apply also to the Plaintiff's PHRA claim.

8

Hostile work environment claims require a plaintiff to establish five elements: (1) the discrimination was intentional and because of the plaintiff's sex; (2) the discrimination against plaintiff was severe or pervasive; (3) the discrimination had a subjective detrimental effect on the plaintiff; (4) the discrimination was objectively detrimental; and (5) respondeat superior liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir.2006)). The initial four elements speak to the existence of a hostile work environment, while the fifth element is determinative of employer liability. *Id.* (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir.2009). Here, the Defendant challenges whether the Plaintiff has established that the discrimination was sufficiently severe or pervasive and whether respondeat superior liability exists. We will address each separately.

### 1. Severe and pervasive

Title VII is not a generalized "civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Accordingly, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original). Factors to consider in determining whether the harassment is actionable include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.*,

510 U.S. 17, 23 (1993). The focus is not on any particular factor, but rather on the totality of the circumstances. *Jensen v. Potter*, 435 F.3d 444, 451-52 (3d Cir. 2006).

Here, a review of the totality of the circumstances reveals that a jury could find that the harassment was severe or pervasive. As set forth above, Plaintiff claims that she was subjected to a barrage of lewd comments and gestures on a daily basis for the five months that she worked for the Defendant. The harassment culminated with the harasser touching Plaintiff on the buttocks.

Defendant cites to several cases that it claims has harassment similar to that which the Plaintiff experienced. The various courts found the evidence insufficient to establish that the harassment was severe or pervasive in those cases. (Doc. 21, Def.'s Supp. Br. at 15-16). Such an inquiry, however, is very fact specific. It is not possible to examine other district court cases and find them to be persuasive as to the totality of the circumstances presented here. Defendant argues that "Plaintiff has put forth no evidence that the asserted speech conduct detrimentally affected her or would detrimentally affect a reasonable person of the same sex in that position." (*Id.* at 17). Defendant's reasoning is not convincing. Its position is that a reasonable person would not be detrimentally affected by daily sexually charged comments. A reasonable person in defendant's view would not be detrimentally affected by a co-worker frequently asking them to leave their significant other and have sexual intercourse. The Court disagrees. If the factfinder finds Plaintiff's testimony credible,

it could conclude that the harassment was severe or pervasive enough to alter the conditions of her employment and create an abusive work environment.

Thus, Defendant's motion on the ground that Plaintiff cannot establish that the harassment was sufficiently severe or pervasive will be denied.

### 2. Respondeat Superior Liability

For the Defendant to be liable for the hostile work environment, Plaintiff must establish the existence of respondeat superior liability. *Mandel*, 706 F.3d at 167. Next, Defendant challenges whether Plaintiff can establish this factor.

In a case involving sexual harassment by a co-worker, respondeat superior liability may be established where the employer "failed to provide reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. . ... That is, an employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104-05 (3d Cir. 2009).

Here, Plaintiff indicates that she complained to her immediate supervisor regarding Clark's behavior. Evidently, nothing was done at that time and the harassment continued for months thereafter. Defendant argues that the one conversation regarding the harassment that Plaintiff alleges she had with her supervisor is insufficient to put the

Defendant on notice of potential sexual harassment in that Plaintiff did not explicitly complain about the sexual nature of the comments. Defendant's position is unconvincing. From the surrounding circumstances, the jury could find that Plaintiff's supervisor knew exactly what she was complaining about. Plaintiff complained that Clark's conduct was severe enough to cause Plaintiff to desire to quit her employment. Her supervisor did not ask her specifically what kind of comments Clark was making, which arguably may be an indication that she already knew. Moreover, Plaintiff states that the harassing conduct was open and obvious, such that it can be inferred that management should have known about it. Indeed, in a conversation outside of work, the catering supervisor of the hotel indicated that she was aware of Clark's treatment of women. This evidence is sufficient to establish that the Defendant knew or should have known of the hostile environment and Plaintiff can establish respondeat superior liability. Defendant's motion for summary judgment on this point will be denied.

### B. Count II – Constructive discharge

"Title VII encompasses employer liability for a constructive discharge." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004). The second count of Plaintiff's complaint asserts such a cause of action for constructive discharge. (Doc. 1, Compl. ¶¶ 45-50). To establish a claim for hostile work environment constructive discharge, a plaintiff must prove more than severe or pervasive harassment. *Suders*, 542 U.S. at 146-47. The plaintiff must

show working conditions so intolerable that a reasonable person would have felt compelled to resign. *Id.* at 147.

Here, Defendant first argues that Plaintiff has not met her burden because she has not even established that the harassment was so severe or pervasive that it altered the conditions of her employment. As discussed in the previous section, however, the Court has rejected this argument.

Next, Defendant argues that its response was such that a reasonable person would not have quit. Plaintiff's version of the facts though, indicate that the Defendant did not take her complaints seriously. The Defendant more or less viewed the harassment, including the touch on the buttocks, as a *de minimis* action and only informed Plaintiff that Clark had been suspended days after she had already quit. A jury could find that the Defendant was apathetic to Plaintiff's plight and such a response was intolerable. Accordingly, the summary judgment motion regarding this issue will be denied.

## V. Conclusion

For the reasons set forth above, the Court concludes that Plaintiff has sufficient evidence, if found credible by a factfinder, to determine that the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her employment and support a sexual harassment hostile work environment claim and respondeat superior liability. Additionally, she may be able to establish that she was constructively discharged.

Accordingly, the Defendant's motion for summary judgment will be denied. An appropriate order follows.

_____
Robert D. Mariani
United States District Judge